[Cite as *In re E.E.*, 2026-Ohio-821.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| IN RE E.E. | Case No. 25CA000043 |
| --- | --- |
| | <u>Opinion And Judgment Entry</u> |
| | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 23JC00262 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: March 11, 2026 |

**BEFORE:** Andrew J. King; Kevin W. Popham; David M. Gormley, Appellate Judges

**APPEARANCES:** RICHARD D. HIXSON, for Appellant-Mother; PATRICIA A. NORRIS, JENNIFER ZAAYER, for Appellee-Agency; CHANDRA L. FORSHEY ONTKO, Guardian ad Litem; CHERYL GADD, CASA.

*King, P.J.*

{¶ 1}  Appellant mother, K.P., appeals the October 27, 2025 decision of the Guernsey County Juvenile Court terminating her parental rights and granting permanent custody of the child to appellee, Guernsey County Children Services ("GCCS").  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On September 5, 2023, GCCS filed a complaint for the temporary custody of E.E. born February 2023, alleging the child to be neglected and dependent.  Mother of the child is K.P., appellant herein; father is J.M.-E.  The initial concerns centered on allegations of mother's homelessness and inappropriate individuals around and babysitting the child.  GCCS initially became involved with the child on June 8, 2023

pursuant to a voluntary agreement of care; when the agreement expired, the complaint was filed. Prior to the complaint being filed, the child was placed in GCCS's temporary custody via an ex parte emergency order on September 1, 2023.

{¶ 3} An adjudicatory hearing was held on October 25, 2023, wherein mother agreed to a finding of dependency; the child remained in GCCS's temporary custody. A dispositional hearing was held on November 13, 2023; temporary custody with GCCS continued. Case plans for the parents were approved and filed. Review hearings were held on February 21, June 26, and September 25, 2024, and January 13, April 16, and July 21, 2025.

{¶ 4} On May 28, 2025, GCCS filed a motion for permanent custody of the child. A hearing was held on October 14, 2025. By journal entry filed October 27, 2025, the trial court terminated all parental rights and granted permanent custody of the child to GCCS.

{¶ 5} Mother filed an appeal with the following assignment of error:

I

{¶ 6} "THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE MINOR CHILD WAS UNSUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶ 7} In her sole assignment of error, mother claims the trial court's finding of best interest in granting permanent custody was unsupported by the evidence and against the manifest weight of the evidence. We disagree.

{¶ 8}  On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered."  *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).  In *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting Black's Law Dictionary (6th Ed. 1990), the Supreme Court of Ohio explained the following:

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its *effect in inducing belief*."  (Emphasis in original.)

{¶ 9}  In weighing the evidence, we are always mindful of the presumption in favor of the trial court's factual findings.  *Eastley v. Volkman*, 2012-Ohio-2179.

{¶ 10} R.C. 2151.414(B)(1) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

(a) The child is not abandoned or orphaned . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . .

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

{¶ 11} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must conduct when ruling on a motion for permanent custody.

{¶ 12} Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 13} The trial court found the child was in GCCS's temporary custody for over 874 days. The child was placed in GCCS's emergency temporary custody on September 1, 2023, the child was adjudicated dependent on October 25, 2023, the motion for permanent custody was filed on May 28, 2025, and the hearing on the motion was held on October 14, 2025; therefore, the trial court found the child was in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two-month period under R.C. 2151.414(B)(1)(d). This finding alone was sufficient to meet the first prong of R.C. 2151.414(B)(1), and mother concedes this fact. Appellant's Brief at 8-9. A finding under R.C. 2151.414(B)(1)(d), coupled with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 2008-Ohio-5458, ¶ 45 (5th Dist.); *accord In re K.B.*, 2025-Ohio-2997, ¶ 45 (5th Dist.). Mother contests the determination on best interest. Mother chose not to testify.

{¶ 14} We note notwithstanding the R.C. 2151.414(B)(1)(d) finding, the trial court further found mother failed to substantially comply with her case plan. *See* Journal Entry filed October 27, 2025. Mother was to provide safe and stable housing and provide for the child's basic needs, undergo a parenting assessment and follow all recommendations

including mental health treatment, and participate in parenting skills training and education. T. at 12, 17-18, 20-22, 24-26. The trial court found mother has not had safe and stable housing and does not have sufficient economic resources to meet the child's basic needs; she has been evicted from her apartment, exhibiting nomadic behavior, and living with known felons and her mother who is a known drug abuser; she has been diagnosed with Major Depressive Disorder, Dependent Personality Disorder, other Specified Trauma and Stressor Related Disorder, together with Mild Intellectual Disabilities, and has been inconsistent with her mental health treatment; and she has been unable to show that she can retain and apply the information learned from a parenting program, as she struggles to properly mix formula for the child and has to be prompted on how to change, burp, and feed the child. These findings are supported in the record. T. at 13-18, 20-22, 24, 31-32, 44, 50-51, 92-94, 117, 123-125.

{¶ 15} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 16} As for best interest, the caseworker testified the child resides in foster care and receives medical care for lack of weight gain and gross motor delays, and participates in physical therapy with early intervention. T. at 46-47. There may be cognitive delays, but the child is still too young to test. T. at 49. The caseworker stated the child needs "a safe and stable home that would help her flourish educationally, medically, and mentally" and mother could not care for the child safely and meet the child's basic needs on her own. T. at 45. The Court Appointed Special Advocate testified that although the parents are aware of the child's medical issues, neither parent has ever asked about the child's medical issues. T. at 118-120. She opined the child's best interest would be best served with permanent custody to GCCS. T. at 116. The guardian ad litem believed permanent

custody to GCCS was in the child's best interest.  T. at 122.  The guardian testified the child has a lot of needs and the child needs someone to put forth the effort to take care of those needs and "I don't see that from either parent."  T. at 126-127.  The trial court considered the parents' bond with the child but their need to be prompted on the overall care for the child; the foster parents' dedication in helping the child in every way possible; the parents' little interest in the child's ongoing medical issues; the custodial history of the child being in GCCS's temporary custody for over 874 days so the child knows no other home than the foster home; and the fact that kinship placement was not an option.  The trial court concluded it was in the child's best interest to grant permanent custody to GCCS.

{¶ 17} Based upon the testimony presented, we do not find the trial court erred in terminating mother's parental rights and granting permanent custody of the child to GCCS.  We find sufficient evidence to support the trial court's decision.

{¶ 18} The sole assignment of error is denied.

{¶ 19} For the reasons stated in our accompanying Opinion, the judgment of the Guernsey County Juvenile Court is AFFIRMED.

{¶ 20} Costs to Appellant.

By: King, P.J.

Popham, J. and

Gormley, J. concur.